R. D. Mills v. Commissioner. Nona T. Mills v. Commissioner.
Mills v. Commissioner
Docket Nos. 57703, 57704.
United States Tax Court
T.C. Memo 1958-26; 1958 Tax Ct. Memo LEXIS 206; 17 T.C.M. (CCH) 108; T.C.M. (RIA) 58026; 8 Oil & Gas Rep. 1181; February 20, 1958
*206 Gift tax: Valuation of mineral interests. - Held that the petitioners have failed to show error in the respondent's determination of the fair market value of gifts of mineral interests made by the petitioners in the year 1951. Arthur Glover, Esq., for the petitioners. Douglas M. Moore, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, J.: The respondent determined deficiencies in gift tax liability with respect to each of the petitioners for the year 1951 in the amount of $3,600. The sole issue relates to the fair market value of mineral interests transferred by deed of gift on November 1, 1951. Findings of Fact The petitioners are husband and wife and reside at Pampa, Texas. In 1951 they owned an 8,000 acre tract of land in "wildcat" territory in Roberts County, Texas. On November 1, 1951, they executed a deed of gift by which they transferred to their three children an undivided one-half interest in and to the oil, gas and other minerals in, on, and under this 8,000 acre tract of land. At the date of the gift the southern portion of the tract, constituting 3,000 acres of the 8,000 acres, was under lease to Humble Oil *207 and Refining Company. The lease to that company had been entered into by the petitioners on February 6, 1945, and was for a primary term of 10 years. It gave the lessee a 7/8 working interest in the oil and gas in the 3,000 acres, the petitioners retaining a 1/8 royalty interest. As consideration for entering into the lease the lessors received a bonus of $2.50 per acre, or a total of $7,500. In addition the lease provided for delay rentals of $1.00 per acre per year. Humble Oil and Refining Company produced no oil or gas throughout the term of its lease. At the date of the gift, November 1, 1951, the northern 5,000 acres of the tract were not under lease. Thereafter, a representative of The Texas Company first approached the petitioners and offered to lease the land, and negotiations were conducted for several days. That company had not conducted any geophysical tests or surveys on the tract prior to that time. On November 19, 1951, the petitioners and their three children joined in a lease of the northern 5,000 acres to The Texas Company. That company was granted a 7/8 working interest in the oil and gas for a primary term of 10 years, for which it paid a bonus of $20 per acre, *208 or a total of $100,000. The lease also provided for annual delay rentals of $1.00 per acre per year and an additional declining royalty payable out of 1/16 of the lessee's 7/8 of oil or gas produced until the lessors received $50,000. The petitioners filed separate gift tax returns for the year 1951 with the collector of internal revenue at Dallas, in which each reported a gift of one-fourth of the mineral interests in the 8,000 acres of land to their three children. Such one-fourth interest was reported as having a fair market value of $25,000. Each petitioner reduced this amount by exclusions totaling $9,000 (being $3,000 for each of 3 donees), resulting in included gifts for the year 1951 of $16,000. Against this, each petitioner claimed a specific exemption of $16,000, resulting in no amount of net gifts subject to tax for that year. The respondent determined deficiencies in gift tax against each petitioner in the amount of $3,600, based upon a determination that the fair market value of the gift made by each petitioner was $65,000. In each notice of deficiency the respondent stated: "It has been determined that on date of gift, the minerals under 8,000 acres of land in Roberts *209 County, Texas, had a fair market value of $40.00 per acre for minerals under 5,000 acres owned in fee, and $20.00 per acre for 3,000 acres of the property on which only royalty interest was owned. It is held, therefore, that the gift, being one-fourth of the 8,000 acres mentioned, has a fair market value of $65,000.00 (1/4 of $260,000.00)." From the $65,000 the respondent deducted total exclusions of $9,000, and allowed a specific exemption of $16,000 in each case, resulting in net gifts of $40,000, on which the gift tax liability was computed. In each notice of deficiency the respondent further stated: "Specific Exemption: You used only $16,000.00 specific exemption in 1951. Should you elect in writing, the remaining exemption available to you may be used, which would reduce the deficiency tax." Opinion The sole issue between the parties is the fair market value, for gift tax purposes, of the mineral interests transferred by the petitioners to their three children on November 1, 1951. [1]
The respondent *210 in the notice of deficiency determined that the total mineral interest in the northern 5,000 acres had a fair market value of $40 per acre and that the total mineral interest owned by the petitioners in the southern 3,000 acres, consisting of a 1/8 royalty interest therein, had a value of $20 per acre. He thus determined that the total mineral interest owned by the petitioners immediately prior to the gift had a fair market value of $260,000 and that accordingly each petitioner made a gift of 1/4 of that amount, or $65,000. The burden of proof is upon the petitioners to show error in the respondent's determination. In view of the fact that The Texas Company, within three weeks after the gifts, paid the petitioners and their children $20 per acre, or $100,000, for a 7/8 working interest in the northern 5,000 acres, we think the evidence clearly shows that at the time of gift a 7/8 working interest in the 5,000 acres would have had an equal value. In this connection it is to be noted that there is no evidence whatever of any surveys or discoveries or other activities between the date of gift and the date of the lease which would indicate a change in value of mineral interests in that *211 area during that interim. Since a 7/8 working interest in the 5,000 acres had a value of $20 per acre, or $100,000, at the date of gift, we think it clear that a remaining 1/8 royalty interest at the date of gift would have had substantial value at that time. Whether such value would have been approximately equal to the value of the 7/8 working interest, $20 per acre, as testified by one witness, we find it unnecessary to decide. The respondent has so determined and the evidence adduced is insufficient to show that it did not have such a value. Upon the record we hold that the petitioners have not sustained the burden of showing error in the respondent's determination that the entire mineral interest in the 5,000 acres owned by the petitioners immediately prior to the gift had a value of $200,000. The petitioners immediately prior to the gift owned only a 1/8 royalty interest in the southern 3,000 acres. The respondent similarly valued this interest at $20 per acre, or $60,000, and here again the evidence adduced by the petitioners does not establish error in the respondent's determination. This 3,000 acres was the southern portion of the overall 8,000 acre tract, and we have no *212 reason to believe from the evidence that mineral values in the southern portion of the tract differed from those in the northern portion. We have given careful consideration to the testimony of the petitioner R. D. Mills that in his opinion the total value of his mineral interest immediately prior to the gift was approximately $100,000, and to the testimony of an independent gas producer who appeared as a witness on behalf of the petitioners to the effect that in his opinion the minerals under the 8,000 acres would not be worth more than $5 per acre. The testimony of this witness was based largely upon the fact that a 10,000 foot dry hole had been drilled in the latter part of 1950 on lands located about 2 or 3 miles south of the tract in question and the fact that on April 17, 1951, he and others had sold a mineral interest, apparently a 7/8 working interest in a 3,000 acre tract, the nearest boundary of which lay about 3 miles southwest of the land in question, for a bonus of $5 per acre. We do not consider this evidence determinative in view of the better evidence of value consisting of the lease of a portion of the very tract in question to The Texas Company within such a short *213 time after the date of the gifts. We hold that the petitioners have not shown error in the respondent's determination that each petitioner transferred mineral interests to their children in 1951 of a fair market value of $65,000. Each petitioner, in the gift tax return, claimed a specific exemption of only $16,000. On brief the respondent concedes that each petitioner is entitled to use his remaining available exemption to reduce the deficiency. Adjustments in this respect will be made in the recomputations under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. Sec. 1005, Internal Revenue Code of 1939. If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.↩